UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LORENZO GREEN, JR.,

Plaintiff,

v.                                                      CAUSE NO. 3:25-CV-1083-PPS-JEM

MEGAN HENSLEY, et al.,

Defendants.

OPINION AND ORDER

Lorenzo Green, Jr., a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Green alleges numerous issues in his complaint. I will address them in turn. First, Green alleges that, around 5:00 p.m. on May 21, 2025, he told three unidentified officers (John Doe Defendants #1-3) that he "was scared for [his] life and would face the threat of violence if [he] went back into the cell [he] was assigned to." ECF 1 at 3. He submitted a written request for protective custody. About a half-hour later, an unidentified officer told Green that his request for protective custody had been

denied. *Id.*

Here, Green appears to be suing John Does #1-3 because his request for protective custody was denied. The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, mere fear of an attack that does not occur does not state a claim for failure to protect. *Doe v. Welborn*, 110 F.3d 520, 523–24 (7th Cir. 1997) ("An allegation that prison officials exposed a prisoner to a risk of violence at the hands of other inmates does not implicate the Eighth Amendment's Cruel and Unusual Punishments Clause." (internal quotation marks and citation omitted)). Therefore, Green may not proceed against John Does #1-3 for failing to protect him.

After his request for protective custody was denied, Green was told to go back to the unit. ECF 1 at 3. While walking back to the unit with his property, Green was stopped by John Does #4-5 and told to "cuff up." *Id.* He was escorted to a holding cell in the OSB 1 building that was stained with urine and blood. *Id.* at 4. Green remained in this cell for over three hours. He asked someone (it is unclear who) for food and water, but Green's request was denied. *Id.*

To the extent that Green is suing regarding the conditions of his confinement during the three hours he was housed in the cell in OSB 1, the allegations in the complaint do not state a claim. Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir.

2

2006). Conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-109 (7th Cir. 1971).  According to the Seventh Circuit:

> Conditions of confinement must be severe to support an Eighth Amendment claim; "the prison officials' act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer* [*v. Brennan*, 511 U.S. 825, 834 (1994)] (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). *See also, Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994) (the Eighth Amendment only protects prisoners from conditions that "exceed contemporary bounds of decency of a mature, civilized society."); *Jackson* [*v. Duckworth*,] 955 F.2d [21,] 22 [(7th Cir. 1992)].

*Morissette v. Peters*, 45 F.3d 1119, 1123 (7th Cir. 1995) (parallel citations omitted).

It is unclear whether John Doe #4 or John Doe #5 were aware of the conditions within the cell. Furthermore, Green's description is far too vague to permit a plausible inference that the conditions exceeded contemporary bounds of decency. As for the denial of food and water, three hours without food or water is not the kind of condition that implicates constitutional concerns. There are many reasons why people, inmates and free citizens alike, will occasionally miss meals. In *Morris v. Kingston*, 368 F. App'x 686 (7th Cir. 2010), the Seventh Circuit considered a much more extreme case where an inmate involuntarily missed 17 meals over 23 days. The court concluded that the plaintiff in that case had not "establish[ed] a constitutional violation because he has not shown that missing his meals or medicine caused serious harm or lasting detriment." *Id.* at 689 (citing *Freeman v. Berge,* 441 F.3d 543, 547 (7th Cir. 2006)). Thus, Green has not stated a claim against John Doe #4 or John Doe #5 based on the conditions in the cell where he was housed for a mere three hours.

Green next alleges that Sgt. Megan Hensley, Sgt. B. Johnson, Sgt. Powell, Officer Adams, and Officer Miller arrived at the cell. ECF 1 at 4. Sgt. Hensley instructed Green to "cuff up". While complying, Green turned his head to ask why he was being cuffed. Sgt. Hensley then sprayed Green in the face with OC Spray. *Id.* At that point, Green was still in the cell and posed no physical threat to correctional staff. *Id.*

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* at 890. Giving Green the benefit of all favorable inferences, as I must at this stage of the case, I find that he has stated a claim against Sgt. Hensley. However, he has not stated an excessive force claim against Sgt. B. Johnson, Sgt. Powell, Officer Adams, or Officer Miller.[1]

---

[1] He likewise has not stated a claim against Sgt. B. Johnson, Sgt. Powell, Officer Adams, or Officer Miller for failure to intervene.

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Doxtator v. O'Brien*, 39 F.4th 852, 864 (7th Cir. 2022) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). It cannot be plausibly inferred that these officers had any notice that Sgt. Hensley planned to use OC spray on Green or that they had a realistic opportunity to intervene to prevent her from doing so.

Next, Sgt. Megan Hensley, Sgt. B. Johnson, Sgt. Powell, Officer Adams, and Officer Miller escorted Green to the N housing unit. ECF 1 at 4. He was taken to the shower and asked if he wanted to rinse off. Green claims the water was scalding hot and he declined. *Id.* He was then escorted to a new cell. Green's claim that the shower he was offered following exposure to OC spray was too hot, without more, does not state a claim against any of these defendants.

When Green arrived at the new cell he noticed his property was not in the cell, so Green turned his head to "protest about [his] missing property" ECF 1 at 4. An unidentified correctional officer (John Doe #6) then squeezed Green's handcuff restraints and twisted them, causing pain in his wrist severe enough that his knees buckled and he yelled. *Id.* at 5. Officers were ordering Green to comply as the handcuffs were being twisted. Sgt. Megan Hensley then used her Taser on Green twice. *Id.* Green reports that he has nerve damage from the twisting of the handcuffs. *Id.* These allegations also state an excessive force claim against John Doe #6 and Sgt. Hensley. However, Green has not stated an excessive force claim against Sgt. B. Johnson, Sgt. Powell, Officer Adams, or Officer Miller.[2]

Green was then secured without being offered another opportunity to shower or an opportunity to go to the medical department. *Id.* Green, however, had already

---

[2] Green also cannot proceed against Sgt. B. Johnson, Sgt. Powell, Officer Adams, or Officer Miller for failure to intervene because it cannot be plausibly inferred that these officers had any notice that Sgt. Hensley planned to use her Taser on Green or that they had a realistic opportunity to intervene to prevent her from doing so. *See Doxtator*, 39 F.4th at 864.

declined a shower. Additionally, he does not indicate that he told any defendant he needed medical attention. Therefore, these allegations do not state a claim.

When he was secured, Green had only the clothes he was wearing. *Id.* at 5. He was not provided with a mattress or his property until May 23, 2025. *Id.* Green does not indicate who he asked for a mattress or link these allegations to any particular defendant. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009)).

Green also alleges that the defendants' actions violated various IDOC policies. *Id.* at 6-7. The Constitution doesn't give Green the right to have IDOC policy followed. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

Finally, Green listed the Miami Correctional Facility as a defendant. This is a building, not a person or policy-making body that can be sued for constitutional violations. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

For these reasons, the court:

(1) GRANTS Lorenzo Green, Jr., leave to proceed against Sgt. Megan Hensley in her individual capacity for compensatory and punitive damages for using excessive force against Green on May 21, 2025, when she sprayed him with OC spray and used a Taser on him despite his compliance with orders, in violation of the Eighth Amendment;

(2) GRANTS Lorenzo Green, Jr., leave to proceed against John Doe #6 in his individual capacity for compensatory and punitive damages for using excessive force against Green on May 21, 2025, when he squeezed and twisted Green's handcuffs and caused damages to the nerves in his wrist despite his compliance with orders, in violation of the Eighth Amendment;

(3) DIRECTS the clerk to add the Warden of the Miami Correctional Facility in his official capacity as a defendant only for the purpose of identifying the unknown officer;

(4) DISMISSES all other claims;

(5) DISMISSES Sgt. B. Johnson, Sgt. Powell, Officer Adams, Officer Miller, Miami Correctional Facility, and John Doe MCF Officers #1-5.

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sgt. Megan Hensley at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(7) WAIVES the Warden of Miami Correctional Facility's obligation to file an answer to the complaint;

(8) ORDERS the Warden of Miami Correctional Facility to appear and identify John Doe #6 by or before **August 19, 2026**, or show cause why he is unable to do so;

(9) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(10) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sgt. Megan Hensley to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED:  July 10, 2026.                              /s/   Philip P. Simon
                                                      PHILIP P. SIMON, JUDGE
                                                      UNITED STATES DISTRICT COURT